Thank you for waiting. We've got two cases remaining on the calendar this morning. The first is Jamul Action Committee v. Stevens. When you're ready. Good morning. May it please the Court. My name is Ken Williams. I represent the Jamul Action Committee, the Jamul Community Church, and several residents of Jamul who are challenging the casino in Jamul. One of my clients, Glenn Revell, is here today, traveled up from San Diego because of the importance of this argument. I'd like to, if possible, reserve about five minutes for rebuttal. Okay. Keep your eye on the clock. We'll try to help. I'll do my best. My clients in this lawsuit are challenging the approvals of the National Indian Gaming Commission of the Gaming Ordinance and the Gaming Management Contract under IGRA because for a half-blood Indian group known as the Jamul Indian Village who chose not to seek Part 83 recognition and who built a casino on four parcels of land, none of which are a reservation under the Indian Gaming Regulatory Act. For all the reasons outlined in our briefing, I think we ask the Court to reverse the district court and grant judgment in our favor. Depending on the Court's questions, I'm going to focus on two issues which I think, if the Court rules in our favor, would dispose of this case for the appellants. The first, Judge Mueller dismissed our case based on a Rule 19 necessary and indispensable party on the finding that the Jamul Indian Village was entitled to sovereign immunity and couldn't be joined in this lawsuit. Our contention is that they are not entitled to sovereign immunity because they are not a historic tribe. Are they a federally recognized tribe? No, they are not a federally recognized tribe. They are a federally recognized and they list tribal entity entitled to financial services from the Bureau of Indian Affairs. That's what the list is called. They're on that list, no question about it. Is there some other list of federally recognized tribes? There should be under the 1994 Tribal List Act. I know, but I asked, is there? What's that? I didn't ask whether there should be another list. I asked, is there another list? Not that I'm aware of, but what I think... So what's your argument as to why they're not a federally recognized tribe? That's a surprising argument to me. The argument is that they have not sought Part 83 federal recognition. The argument is in, if you read Director Bacon's letter in 1993, which she sent right before the 1994 List Act... I think that's been disavowed, hasn't it? What's that? I think that letter has been disavowed. Is that not true? I'm sorry, I didn't hear you. I think that letter has been disavowed. Is that not true? I don't think so, Your Honor. They did not disavow it. They did not even address it in their answering brief. If they did disavow it, they could have told us in their answering brief that it was disavowed. But they did respond in their answering brief and explain that the acting director's letter, which in some fashion drew a distinction between historic and created tribes, was then repudiated and rejected by Congress when they passed the 1994 Act and created the List. Well, if you look at the 1984 Act, and I think that is probably where we should start, and the statute that called the List Act, it says that three categories of tribes, three categories currently are recognized as tribes, those by Congress, those by court, and then they quote, they specifically reference, and they quote, and I'm reading from the statute, and those recognized by the administrative procedures set forth in Part 83 of the Code of Federal Regulations denominated procedures for establishing that an American Indian group exists as an Indian tribe. That is Congress telling the Department of Interior that the only administrative way to recognize a tribe is through the Part 83 procedures. The year before this is when Director Bacon found that they were not a Part 83 tribe. They were not a historic tribe. They were a created tribe with delegated powers at best. And if you want sovereign immunity under the United States v. Wheeler case, the Supreme Court case, and many cases after, you have to have been a historic tribe in existence before the United States became a country, and you retain that sovereign immunity as a part of your inherent sovereignty. We don't have that here. Under your theory, how many federally recognized tribes comparable to this tribe would no longer be, in your view, federally recognized tribes? How many tribes would be affected? Well, I haven't calculated that. I know that there was shortly after the Part 83 regulations, and this is outside the record, but I'm aware of it, that there were, I think Senator Feinstein's office asked the Department of Interior that very question is not, you know, how many are what they would call created tribes or administratively created tribes, and how many are actually Part 83 recognized? That's my question. Huh? And that's my question, and you don't know the answer. Well, I don't know the answer. I can... Is it more than one or two? I don't know the answer to that, Your Honor. I don't want to speculate because there are other ways to be federally recognized. Many California tribes, 17 I think, were recognized under the settlement in the Tilley-Harwick case. So even if they didn't go through the Part 83, they're under a category that says court approval. Some of the tribes, like the United Auburn and Great and Grant Sharia, were federally recognized by an act of Congress. The third way you can be recognized, and the only administrative way you can be recognized, is through the Part 83 process, and there's a reason behind that. It's because then you have a process where the public and people can comment, you can contest, you can have issues. There's no administrative process for a Bureau of Indian Affairs employee to put your name on the list. What's interesting here is the Humol Indian Village was not on the first list in 1979. They were put on the list in 1982, one year after they organized for the very purpose of getting financial aid and financial services. And they were told, you've got two choices here. If you can organize as a half-blood Indian community, you'll get financial aid a lot quicker, or you can try the Part 83 petition, and it's going to take time and there's no guarantee. They said, make us a half-blood Indian community. We need the aid. This, of course, was, you know, seven years before IGRA. So doesn't the tribe have an interest in whether they are, in fact, a federally recognized tribe and have sovereign immunity? I mean, don't they have a legitimate interest in that issue? But yet, they're not parties to this lawsuit. So why was the district judge's Rule 19 order incorrect? It's incorrect because this is a question of law. And the undisputed facts, as we have alleged, is that they're not an historic tribe. So they're not entitled to be. But that doesn't answer my question. You want to litigate that and argue that, but they are a party that seems clearly to have an interest in that. They will be tremendously and profoundly affected by a resolution of that issue. But they're not here to present their argument. So why are they not a necessary party under Rule 19? Well, they were here. They were here. The Humboldt Indian Village actively participated in front of Judge Mueller as a litigating amicus. They called it an amicus, but it was virtually their own motion to dismiss for the very reasons that Your Honor mentioned. So they made a limited appearance. They sought to file an amicus brief. But that doesn't mean that they now have unfettered rights to participate in the litigation. Well, it's a debatable issue whether it's a limited appearance. But let's assume it is. They were allowed to file it in the form of a motion to dismiss. Judge Mueller said, disagreed with my contention and agreed with them, and so we're appealing on that very issue. They had an opportunity to litigate the issue as a litigating amicus. If they had never been part of this case, I could see Your Honor's point. I have to interrupt you. They're not litigating the substantive issue that you are arguing to us this morning, which is whether they are a federally recognized tribe entitled to sovereign immunity. What they were litigating before the district court was whether they are a necessary party, because you've named tribal officers, which is another issue as to whether those people could adequately represent the tribe's interest here. So as I understand what happened procedurally, they came in to say, whoa, whoa, whoa, you can't litigate this substantive issue because we are profoundly affected by it and we're not a party. They didn't come in and, as I understand it, litigate the particular issue of whether they are a tribe. I don't think that's correct. When we filed our complaint at the very beginning, the federal government asked us to delay. They were going to file a motion to dismiss based on the necessary party issue. They asked us to delay so that the village could file an amicus at the time. They filed a 500-page amicus not only arguing that they are a recognized tribe, even though a historic tribe entitled to sovereign immunity, they argued the merits. That's why I call them litigating amicus. So they put it in issue. They brought in evidence on the merits. And so when I say that it's a debatable point as to whether or not they waived their immunity or appeared specially, I don't think they did. They appeared generally and litigated the case. If they had just filed a friend-of-the-court case and said, Your Honors, you can't do this, we're very concerned because we're a recognized tribe and we have an interest in what you're litigating. Now, let's assume that was the case. Let's assume that that's all they did. What we have here, then, at best, is we have an Administrative Procedure Act case where the federal government now has conceded that even if they were a federally recognized tribe, that they're not a necessary and indispensable party for our APA action against the Indian Gaming Commission challenging the gaming ordinance and the gaming management contract. The Humboldt Indian Village is not a necessary party to that issue, even if you assume that they are a recognized tribe. So why is that so? How's that so? Yeah, why is that so? That's the case law. That is because, and actually Judge Mueller addressed this in her finding that the Humboldt Indian Village is not a necessary party to the NEPA action. And the reason is, according to Judge Mueller and the cases you read, are that even federally recognized tribes have no interest in how a federal agency, in ensuring that a federal agency complies with the procedures. So you have the Macaque, you have a whole series of Kootenai cases that we cited in our brief where the courts have said the only necessary party in an APA case is the federal government. That's because you are trying to enforce and protect procedures. And that very issue was admitted by the federal government in their answering brief. And their position is, well, yeah, that's true, but there was no final agency action here. That's their position in their answering brief. And there are two final agency actions here, which were specifically acknowledged in the Indian Gaming Regulatory Act to be final agency actions. The approval of the gaming ordinance and the approval of the management agreement and the collateral agreements. So we don't need the Humboldt Indian Village, even if they are a federally recognized tribe and my contention is wrong, we don't need them to litigate those issues. And Judge Mueller was wrong on that, and I think that the federal government concedes that now, that they were wrong. The other position, the other big issue that I wanted to bring to the court's attention, which is that none of the four parcels on which this land is constructed is a federal reservation. None of the four parcels have been taken into trust pursuant to 25 CFR Part 151. With respect to that, why is the tribe not a necessary and dispensable party? To what? The question is whether the state has this land. It's the same reason because it's the third, in addition to the gaming management contract and the gaming ordinance, a predicate for the NIGC to even have jurisdiction under the Bay Mills case is that you have to have Indian land. And so it's part of that determination. And that implicates a determination under the Indian Reorganization Act, the fee-to-trust procedures, the Carcieri decision, and all of that comes in there. But that just ends up being another APA decision, which the tribe itself is not a necessary party to. So the tribe has no interest in whether this is tribal land? Well, I didn't say that, Your Honor. I said that the tribe is not a necessary party to a challenge to a fee-to-trust challenge or to a reservation proclamation under the Indian Reorganization Act, to an APA challenge. I'm not saying that certainly they have an interest, and they certainly can intervene. Some tribes waive their immunity and say, wait a minute, you're not going to litigate this without us. Some tribes actually file a true amicus. Some tribes, like here, file what you call a litigating amicus where they're like a party. But I'm not saying they don't have an interest. I'm just saying they're not a necessary party under Rule 19. So if your claim is an APA claim, what about the six-year statute of limitations? Why does the statute of limitations not bar your claims? Well, I'm assuming you're the Big Lagoon case. Yes. The Big Lagoon case was an important case by this circuit, by the way, a very important case. In Big Lagoon, the tribe there applied under Part 151 to have lands taken into trust. That allowed California and everybody else to participate in that process. They did. California did participate, and California objected. But what California didn't do was litigate. So this court, in its en banc decision, said, wait a minute, California. You cannot raise basically the Cartier issue. You cannot raise that as a defense to a lawsuit by the Big Lagoon trying to compel negotiations. The reason that doesn't apply is we've never had a Part 151 process here. We never had an opportunity to provide comments. What they say in their answering brief, they talk about one parcel. In 1978, a deed was conveyed to individual Homolindians. That was never taken into trust pursuant to 151, and it was three years before the Homolindian village was even created. Now, you're down to about three and a half minutes. Do you want to save? Yes, Your Honor. I will save it. Thank you. I'm sorry if I'm speaking too loud. No, you're doing just fine. Thank you. Thank you. That loud is better for me. Thank you. Good morning, Your Honors. May it please the Court. My name is Varu Chilakamari for the United States. I will be sharing my time with Frank Lawrence for the tribally related defendants. I will take 12 minutes, and he will take eight minutes. Okay. I'd like to respond to some of the points made. But first, I think the way the federal government looks at this case is that you can – and before I start that, I want to note that this is – the Homolindian village is a federally recognized tribe. It was placed on the list in 1982. It's been on every subsequent list until present day. Starting with that premise, there are a number of ways you can dismiss this case and affirm the district court's dismissal. The first way is law of the case. This court in the interlocutory appeal made very clear that any underlying attack to the Indian land determination, any attack on the 1980s entrustment decisions and the recognition of the tribe that happened in 1980, that is all a collateral – a belated collateral attack under Big Lagoon. So law of the case in this particular case, I think, dictates the outcome. And it wasn't a preliminary ruling. It was a very clear ruling by this court in the unpublished opinion. As to Big Lagoon, I think Your Honor is absolutely correct. This case is just like Big Lagoon. In Big Lagoon, you had California challenging the entrustment decision and the federal recognition decision of a tribe, just as these plaintiffs are doing here. What the plaintiffs' counsel has said is that Big Lagoon somehow turned on how the tribe was recognized. That is not so. Big Lagoon turned on when the tribe was recognized. And just like in Big Lagoon here, the tribe was recognized federally in 1982. That is way outside of any statute of limitations to try to attack that underlying decision. Big Lagoon, I think, forecloses this entire case. And I think you can get rid of the entire case based on Big Lagoon because each of the claims in their complaint that survive are all essentially underlying attacks to a so-called Indian land determination. And the basis for those attacks are completely that they're attacking how the tribe was recognized and the basis for the initial entrustment decisions, which all happened in 1982. Now, if you got past law of the case, if you got past Big Lagoon, there's another problem here. There is no final agency action. There's no final agency determination making an Indian lands determination. The plaintiff's counsel has pointed to two. Now they're pointing to two agency actions, the gaming ordinance and the management contract. And I'll take those two in turn. The management contract, as the district court concluded, the management contract here was approved in 2016. The operative complaint was in 2014. Therefore, as the district court said, the court lacked subject matter jurisdiction over the management contract. So any decision that was made with respect to approving that management contract, any challenge to that is effectively moot. And even if it were not, my co-counsel provided this court with a 28-J letter, which stated that in 2018 the tribe terminated its management contract with the private companies and that the tribe is now managing the casino itself. So there's no management contract approval that's really on the table. As for the gaming ordinance, there's a 2013 gaming ordinance that is a final agency action, but the gaming ordinance made no Indian land determination. The gaming ordinance here was not a site-specific gaming ordinance. It simply referred to Indian lands and describes the definition of Indian lands under IGRA. And I think under this court's decision in the North County case, it's at 573 F3rd 738, this court, and I won't say, but it was a Judge Fletcher opinion, this court did say that a non-site-specific gaming ordinance does not make an Indian land determination under IGRA. What was the date of that decision? 2008. And it said W. Fletcher? I believe so. There was another Fletcher. Maybe she did it. But it's a good decision. It says that the gaming ordinance that is not site-specific doesn't have to contain an Indian land determination, and this one did not. So there's no final agency action here within any realm of the statute of limitations period. Now, I think that all disposes of the case, but I'd like to address a couple of the points that plaintiffs have made with respect to how this tribe was recognized. What the plaintiff's counsel says is that this Indian, that the tribe was not recognized under the Part 83 process and that that somehow delegitimizes the recognition. That is not so. This court said in Pitt River, and we cite this case in our brief, that at the time tribes, there are a number of ways in which tribes could be recognized. And also, Section 103 of the IRA has amended the section that the plaintiff's counsel was talking about, which refers to the different methods. That is talking about methods that are presently recognized. That was in 1994. But Pitt River made clear that there were other methods, and in this case, this tribe was recognized through organization directly under the IRA. Plaintiff's counsel also points to a 1993 letter in the record, and I think Your Honor is correct that that letter was essentially repudiated by Congress in 1994 when Congress amended the IRA, and I would point the court to Section 103 of the IRA, Section 16, and subsection F and G. And that's important. It's 25 U.S.C. 5123. F and G talk about the privileges and immunities that are given to tribes, and Congress made clear that they were terminating this policy of, they were repudiating a policy of terminating tribes. And they said at this point, we are no longer going to differentiate between tribes that are federally recognized, and any decisions that were made before 1994 that seek to differentiate or classify tribes differently based on their recognition is no longer good law. Now, do you have an answer to the question I asked the other side as to how many tribes would be affected if we went their way? I don't have an answer to that, Your Honor. So plaintiff's counsel suggested that being on the list of recognized tribes in the Federal Register does not make you a federally recognized tribe. How do you respond to that? Well, federal recognition, I think this Court has long said, is a decision that the executive branch makes. And the Federal Congress in the List Act specifically gave to the Secretary the decision to articulate in the Federal Register which tribes the federal government and the executive branch was recognizing. And when it recognizes the tribe, it is then effectuating a government-to-government relationship with that new political entity. And I would also point the Court to the Federal Register, the most recent Federal Register notice, and those going back from when in 1994 Congress required the list. The list itself explains that the listed Indian entities are acknowledged to have the immunities and privileges available to federally recognized tribes by virtue of their government-to-government relationship. And that is stated in the most recent Federal Register notice. That's 83 Federal Register 34863. And that same language appears on the list if you go back, I believe, to 1994. And that's why not only does the List Act, does the list say that they have the privileges and immunities of all recognized tribes, but Congress itself, when it amended the IRA and added those subsections, F and G, the Privileges and Immunities Clause, Congress itself said that all federally recognized tribes have the privileges and immunities. And that's why I think on the question of sovereign immunity, that would be my answer to the question of whether the tribe has sovereign immunity here. We don't think you need to reach the Rule 19 question because there are other threshold reasons for dismissing the case. But as we said in our brief, because we don't view there being a proper APA challenge, the tribe would be a necessary and indispensable party as the district court concluded. Unless there are any further questions, I would leave the balance of my time for. Okay. Thank you. Good morning. Again, Your Honors, and may it please the Court, Frank Lawrence appearing for the tribally related defendants and appellees. Congress said in 25 U.S.C. Section 5130, and I'm quoting, the term Indian tribe, in quotes, means any Indian or Alaskan native tribe, band, nation, Pueblo, village, or community that the Secretary of Interior acknowledges to exist as an Indian tribe and then requires the Secretary to publish that list. That is federal recognition. It's a political relationship, a government-to-government relationship between the United States and the tribe, and that's how it happens. The 1993 operations department letter that the appellants have cited was voided in 1994 when Congress enacted the statute that is now at 25 U.S.C. 5123, parentheses, F as in Frank, G as in Gary, that my co-counsel spoke about. It eliminated any distinctions that might have existed in the law prior to that time between federally recognized tribes on any basis. And I think it's worth quoting the statutory language because it goes directly to the plaintiff and appellant's claim that this tribe is not a historic tribe or not recognized through the Part 83 Avenue and that that somehow diminishes their sovereignty and their sovereign immunity. Congress said departments or agencies, I'm reading from 25 U.S.C. 5123, parentheses, F, departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to, and then it cites the IRA, as amended, or any other act of Congress with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as tribes. That's very clear what I think of as nondiscrimination language. We don't have two classes of federally recognized Indian tribes. Do we need to reach that question in order to decide this case? You don't, Your Honor. Can we reach that question? I'd actually kind of like to reach it. Can we reach it? Is it really in the case? Do we need to reach it in order to decide the case? I don't think so, Your Honor. The district court dismissed on Rule 19 grounds. Well, but if you were to dismiss on Rule 19 grounds, that assumes there's a tribe. It doesn't necessarily. Well, if we're on that ground, I think we reached the question. I'm sorry, Your Honor. That is to say, if we dismiss on Rule 19 grounds, I think it does assume that this is a federally recognized tribe because without the federal recognition, it doesn't have sovereign immunity. And then it can be joined. So that was the problem under Rule 19. As plaintiffs' counsel recognized the tribe has an interest in these issues, then is it feasible to join them? Well, no, because they have sovereign immunity. So then you have to decide whether dismissal is appropriate. And there's some factors there. And the district court's analysis included the decision that this is a federally recognized tribe with sovereign immunity. As this court has decided twice previously, Your Honor, in the case I mentioned earlier, Rosales v. U.S., 73 Federal Appendix 913-2003, I'm quoting, the village enjoys sovereign immunity from suit and cannot be forced to join this action without its consent, unquote. And continued, quote, the village is a necessary party, ellipses. The village is also an indispensable party. And the Federal Court of Claims in Rosales v. United States, 89, Federal Court of Claims 565 in 2009, quote, the village is therefore an indispensable party to the instant action that attacked the tribe's ownership of its lands. The Southern District of California. In those cases were the courts deciding that the village was an indispensable party because the issue of their sovereign immunity had been raised, or did the court affirmatively decide that? I'm not suggesting that the courts suggested or held that they were not a recognized tribe. But it seems as if those cases are not squarely on point, that the court reaching this now, that the issue would be before us and it would be a useful thing to do. Well, this has come up for decades because the plaintiffs have continuously claimed that the land is an Indian trust land and the tribe's not. Right, which is why I would rather like to reach the question in a published opinion. Well, I think the Ninth Circuit has done this. I think you did it in your interlocutory appeal in this case. I think you did it in the 2003 case that I cited. The District Court in the District of Columbia did it in Rosales v. United States in 2007. As I was starting to say, the Federal Court of Claims did it in 2009. They held the village as a tribal governmental entity of Kumeyaay Indians, which Congress recognized pursuant to the IRA. How many times and how many courts have to say it? I would welcome another opinion, Your Honor. I'm not sure it would. Some of those things are unpublished, right? No. These are all published opinions. You gave me a FedEx site. Federal appendix unpublished. That one is not published. But the prior Ninth Circuit decision in this case is at 837 Fed Third 958. The Court of Claims case is at 89 Federal Claims 565. The D.C. District Court opinion is at 477 F Second 119. And then there's an unpublished decision from Judge Gonzales in the Southern District also that's not published from 2007. I guess the question is how many nails do we need in that coffin? The coffin is pretty full at this point, Your Honor, and yet here we are. So the Plaintiffs' Counsel suggests, or at least I think he was suggesting, that by appearing as an amicus, the tribe waived its sovereign immunity and was litigating amicus. They made that argument below and the District Court rejected it. The authority for tribes to file an amicus brief to simply say, hey, we're a tribe, we claim an interest in the subject matter of that litigation, we can't be joined. Because the parties don't always necessarily raise that threshold issue. And that is not a waiver. Under well-settled Supreme Court and Ninth Circuit authority, waivers of any government's immunity have to be clear, express, valid. It's a high bar. And the Supreme Court has said over and over again there are no equitable exceptions to that rule. There is no waiver by implication. Courts may not infer a waiver by conduct, et cetera, et cetera. I think we've cited probably a lot of those cases in our briefs. I would just say that from my perspective we agree with the government's representation about the lack of any final agency action on any of the decisions that are here. Their only basis for bringing this suit is to try to stop the tribe from having a casino, which is right under tribal, federal, and state law. And their only grounds that they raise is that it's not a tribe and it's not federal Indian land. And as I said, that's been litigated over and over and over again. Okay. Okay. Thank you, Your Honors. You've saved some time. I saved time. My list is sort of long. But let me see, sort of go in reverse order here about the decades, I guess, and many lawsuits were in the Rosales lawsuits, which was a disagreement among Homol Indian tribe. My client, Homol Indians, as to whether or not who, some of it involved the beneficial ownership of the one parcel, some of it involved the right to an election. My client was not a member of any of those. And when you read them, and I don't know that the issues were disputed or conceded. I haven't gone through all of those. But it's in recital. They sort of open. They're a federally recognized tribe. What they are, and we don't contest. So you wouldn't mind an opinion addressing that question directly as a holding? I think, well, I'm not. Careful what you wish for. Well, to answer your question, mine, I guess it depends on what you decide. But to answer the question, I was thinking about how many other tribes would this affect. And I think, you know, you tend to get sort of, we tend all to get a little bit concerned about the broad impact. I think the impact here would be narrow. It would only apply to communities that are arguing that they're half-blood formed after the United States became a state. I don't know. There may be one or two other California tribes that did that. This morning's case was an Allen, was very revealing to me. That was, I've never seen a group of Indians who are not tribes. I mean, Section 16 talks about tribes requesting elections, not half-blood individual Indians requesting elections. But I don't want to delve into that. But other than to point out that the impact may not be as great as this court might think. If the ruling is where you have a statement by a federal entity that a group is organized as a half-blood Indian community, they're not a Part 83 tribe, and perhaps even more than that, they're not a historic tribe. They're a created tribe with delegated powers. I don't know how many tribes in California or groups of Indians claiming to be tribes meet all of those criteria. So I think Director Bacon gives you sort of a road map to draft a very focused opinion, just with this group that wouldn't have broad implication. I don't think you need to say if you don't get Part 83, you're not a recognized tribe, because there's a lot of tribes in California, administratively created tribes that some cases have held, well, you are a historic tribe. There's. If you've got other issues, I warn you, you're down to about 40 seconds. Oh, okay, Your Honor. I think to address the federal government, the Big Lagoon did not involve a challenge to federal recognition. It involved a challenge to the feed of trust, and we're not challenging their whatever. We acknowledge that they're a half-blood Indian group. The North Coast case, it was said that just non-site-specific ordinance need not, you don't need to have an Indian lands determination, but this, if you look at the excerpt to the record 58, this gaming ordinance was specifically tied to what they claim was the reservation. This was a site-specific regulation, and I'm not quite sure that the federal government sort of doubled down on there's no final agency action, but then she talked about the approval of the ordinance and approval of the management agreement. Those are the two final agency actions under IGRA. That's it. Okay, if you want to sum up. Yes, Your Honor. You're over time. I appreciate it. Thank you very much, Your Honor. I would recommend a request, respectfully request, that the court reverse the district court decision because a half-blood Indian group, which the federal government has said is not a Part 83 tribe, is not entitled to a casino, especially when they want to build a casino, when they did build a casino on non-Indian land. And there are a lot of other issues, but I won't try to stretch the court's indulgence. Thank you very much. Thank you very much. Thank both sides for their arguments, their helpful arguments. Humboldt Action Committee versus, I'm going to have trouble with the name, Choudhury, is now submitted for decision.
judges: W. Fletcher, Bade, Moskowitz